The STATE of Ohio, Appellee,

v.

PIERSON, Appellant.■

[Cite as *State v. Pierson* (1998), 128 Ohio App.3d 255.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 16440.

Decided June 5, 1998.

*Mathias H. Heck, Jr.*, Montgomery County Prosecuting Attorney, and *Karyn J. Lynn*, Assistant Prosecuting Attorney, Appellate Division, for appellee.

*J. Allen Wilmes*, for appellant.

FAIN, Judge.

Defendant-appellant, Steven Karl Pierson, appeals from his conviction and sentence for trafficking, in the vicinity of a juvenile, and for carrying a concealed weapon. Pierson contends that the trial court erred by denying his motion to suppress evidence allegedly obtained as a result of an unlawful search and seizure. Pierson also contends that the trial court erred by allowing, over his objection, evidence that he had sold drugs in the past.

We conclude that the trial court properly denied Pierson's motion to suppress because, although the police did not know it when they initially stopped him, there was a warrant outstanding for his arrest on unrelated charges when he was stopped and taken into custody. Evidence was obtained as a result of a proper inventory search of his vehicle after he was arrested.

However, we agree with Pierson that the trial court erred when it permitted evidence of prior drug sales. Accordingly, the judgment of the trial court is reversed and this cause is remanded for further proceedings.

I

In the summer of 1996, Miamisburg police received information that cocaine was being sold at an apartment occupied by Leon and Velvet Fletcher. An undercover officer went into the apartment to buy cocaine but was unsuccessful because Leon Fletcher said he was waiting for Pierson, his supplier, to provide him with more cocaine.

As a result of several additional attempts to arrange a purchase of cocaine over the telephone, police became aware that a new supply of cocaine was to be delivered on August 2, 1996. Police negotiated a purchase of cocaine from the

Fletchers after they were resupplied by Pierson. Based on this information, a search warrant was obtained for the Fletchers' apartment.

Pierson and another man arrived at the Fletchers' apartment complex in a car with Illinois license plates at about 4:40 p.m. on August 2, 1996. After a thirty-minute wait, Leon Fletcher arrived home. Shortly after Leon Fletcher entered the building, Pierson and his companion entered the building.

When Pierson and his companion left, some time later, the police wanted to stop him but decided to wait until he was some distance from the apartment, in order to avoid alerting Leon Fletcher. After Pierson and his companion had driven some distance from the scene, they were stopped, at gunpoint. They were both patted down for weapons, secured, arrested, and placed in the back of a police cruiser. No weapon was found on Pierson's person. Eight hundred ten dollars in cash and a bottle of acetaminophen were found on Pierson's person. A pager that, when activated, had Leon Fletcher's phone number on it, was recovered from the car later that evening during an inventory search.

Although Pierson did not initially identify himself by that name, he did verify, several hours later, that his name was Steven Pierson. A records check through the Dayton Police Department indicated that he had an outstanding warrant for DUI.

Some time after Pierson's arrest, the search warrant was executed on the Fletchers' premises. As a result, Leon Fletcher was arrested and charged with trafficking. He testified on behalf of the state at Pierson's trial.

During an inventory search of the car in which Pierson had been at the time he was stopped and arrested, a police officer noted a sheet on the front seat going across a split bench and armrest. The officer pulled out the sheet and immediately saw a handgun under the armrest. The gun was positioned so that it would have been easily retrievable by either the driver or the front seat passenger. An Olympia beer can was also found at this time. The beer can had no obvious significance at this time, but became significant as a result of Leon Fletcher's testimony concerning its use as a container for the cocaine supplied by Pierson.

Pierson was indicted upon one count of trafficking in cocaine within the vicinity of a school or in the vicinity of a juvenile, and upon one count of carrying a concealed weapon. He moved to suppress evidence, contending that it was obtained as a result of an unlawful search. Following a hearing, his motion to suppress was denied.

Following a jury trial, Pierson was convicted upon both counts and sentenced accordingly. From his conviction and sentence, Pierson appeals.

## II

Pierson's first assignment of error is as follows:

"It was error for the trial court to overrule defendant–appellant's pretrial motion for suppression of the fruits of the warrantless search and seizure of his automobile and person. For that reason, defendant–appellant is entitled to trial *de novo* excluding evidence obtained by police during and subsequent to the warrantless search."

Pierson contends that by not executing the search warrant for the Fletchers' apartment while Pierson was in the apartment, but, instead, letting Pierson leave the premises, the police manufactured exigent circumstances for a warrantless stop and search of Fletcher as he was lawfully traveling along the highway. In our view, the state simply, and correctly, disposes of this argument by pointing out that there was a warrant for Pierson's arrest outstanding at the time he was stopped and taken into custody. An arrest warrant clothes the police with authority to take its subject into custody, whether or not the police officers are aware of the existence of the warrant. *Dayton v. Click* (Oct. 5, 1994), Montgomery App. No. 14328, unreported, 1994 WL 543210; *State v. Meyers* (May 31, 1995), Montgomery App. No. 14856, unreported, 1995 WL 328159. The gun and the Olympia beer can were obtained as a result of an inventory search of the car, following the arrest of its occupants. Although Pierson complains that the use of a trained dog to sniff the car went beyond the scope of an inventory search, the only interest shown by the dog in the car concerned the rear bumper. The gun was found in the front seat. The finding of the gun, therefore, appears to be the result of a proper inventory search, and the finding of the gun justified a thorough search for contraband.

Pierson's first assignment of error is overruled.

## III

Pierson's second assignment of error is as follows:

"Where the court admits evidence opf [*sic*] 'prior bad acts' which are otherwise prohibited under Evid. R. 404(B) under a supposed exception to the operation of the rule, and the balance of the evidence against the defendant is, at best, 'scant,' it is error requiring reversal of such defendant's conviction for the court to fail to give the jury instruction limiting the use to which it may put the testimonial evidence."

The state relied upon the testimony of Leon Fletcher to establish that Pierson sold Fletcher cocaine on August 2, 1996. Over objection, the state elicited

testimony from Fletcher concerning previous drug dealings with Pierson, as follows:

"Q. Now, when we're talking about when this subject first came up, when are we talking about?

"A. Probably back over a year ago.

"Q. A year from now?

"A. Right.

"Q. So, like, about January of '96?

"A. Yeah. More toward—more toward summer. So back a couple of months.

"Q. And you said something about he [Pierson] asked if you knew people?

"A. Yeah. If I knew anybody that wanted to buy any coke. And I found, like, a few people. If I did, he would give me, like, a 10 or 20 spot.

"Q. Why did you start becoming involved in it?

"A. The money, really.

"Q. Okay.

"A. Plus the partying, too.

"Q. What do you mean by that?

"A. Do the cocaine.

"Q. Okay. And did you and Mr. Pierson work out a relationship about how often you would be supplied and how that would be done?

"A. He just come over, like, once a week. Or I'd page him, and he would drop me off either a quarter or half ounce.

"And I'd sell that for him, get the money, and then give him the money. And then he'd, you know, drop off some more.

"Q. Okay. Who set the price for the cocaine?

"A. He did.

"Q. Okay. And what were his prices?

"A. It was, like, 240 for a quarter ounce and 810 for a half.

"Q. Okay. And it was always those prices?

"A. Right.

"Q. Okay. It just depended upon the quantity?

"A. Uh-huh.

"Q. Okay. Now, you talked about you would page him?

"A. Yeah.

"Q. Now, would you do that all the time or just some of the time?

"A. I paged him when I needed some more.

"Q. So every time you needed a resupply, you paged him?

"A. Right.

"Q. Okay. And how long did this go on?

"A. About half a year before I started getting in deep.

"Q. Okay. And on August the 2nd, when this incident occurred, were you working on August the 2nd?"

Pierson contends that the introduction of the testimony concerning earlier drug sales, over his objection, violated Evid.R. 404(B), which provides as follows:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

The state contends that the evidence of Pierson's prior drug sales to Fletcher was not offered for the forbidden inference that "he did it before, therefore, he must have done it this time," but for a different purpose. The state cites *State v. Woodard* (1993), 68 Ohio St.3d 70, 623 N.E.2d 75, contending that in this case, as in *Woodard*, proof of the defendant's prior bad acts was not offered for the forbidden purpose, but, instead, to prove the identity of the perpetrator and his criminal purpose.

Criminal purpose was not an issue in the case before us. Pierson's defense was not that he lacked the requisite intent, but that Fletcher was lying and that Pierson did not, in fact, sell cocaine to Fletcher as charged.

Nor was this a case involving questionable eyewitness identification. There was no question that Pierson was the person who had been in Fletcher's apartment—the police saw him go in, and the police saw him come out. The issue was whether to believe Fletcher's testimony that Pierson sold him cocaine on that occasion.

*State v. Woodard*, upon which the state relies, is a case in which a distinctive *modus operandi* was used as evidence to prove the identity of the defendant as the perpetrator of the charged offense. In that kind of case, proof is offered that the defendant has committed one or more uncharged offenses with a distinctive *modus operandi* identical to that used in the commission of the charged offense. A reasonable inference arises that the perpetrators of these offenses with a

distinctive, identical *modus operandi* are one and the same, so that if the defendant is proven to be the perpetrator of the uncharged offense or offenses, then he is also the perpetrator of the charged offense. This inference loses its logical force if the proof of the similar offenses does not come from an independent source. In *Woodard*, the witnesses to the two, similar carjackings were different from the witnesses to the charged offense. In the case before us, however, Leon Fletcher was the same witness used to prove both the charged offense and the similar uncharged offenses. Since the state's proof depended upon Fletcher's credibility, his testimony concerning the uncharged prior drug sales added no independent probative value of Pierson's identity as the perpetrator of the charged offense.

Because the testimony of Leon Fletcher that Pierson had previously sold him cocaine had no probative force other than the inference forbidden by Evid.R. 404(B), we agree with Pierson's trial counsel, who told the trial court, after his objection to this testimony had been overruled, that any limiting instruction would have been futile. There was no legitimate purpose to which to limit this testimony.

We agree with Pierson that the introduction of this evidence was erroneous and that it was prejudicial. Pierson's second assignment of error is sustained.

## IV

Pierson's second assignment of error having been sustained, we reverse the judgment of the trial court and remand this cause for a new trial.

*Judgment reversed
and cause remanded.*

BROGAN and GRADY, JJ., concur.