OPINION
The state appeals from a judgment of the Montgomery County Court of Common Pleas which granted Sidney Brown's motion to suppress.
The evidence presented at the hearing on the motion to suppress established two different versions of the events in question. Despite the different versions of events related by the parties' witnesses, the facts material to this appeal are not in dispute.
The state presented the following version of events. At approximately 6:20 p.m. on April 21, 1999, Dayton police officers John Beall and Chris Smith were patrolling the 400 block of Groveland Avenue due to numerous citizen complaints of drug sales inside and outside 444 Groveland Avenue. Beall drove down the block between fifteen and twenty miles per hour, and Smith followed Beall in a separate police cruiser. As Beall approached 444 Groveland, he noticed three individuals sitting on the front steps of the residence. He also saw Brown cross the street directly in front of 444 Groveland and walk toward a car that was parked across from the residence. As Brown reached the car, he apparently noticed Beall, looked toward the three individuals on the steps, and yelled, "Police," in a "loud" and "serious" manner, before entering the left rear passenger side of the car. The three individuals on the steps immediately got up and ran inside 444 Groveland, shutting the door behind them.
Beall approached the car and asked Brown why he had yelled "police." He also asked Brown for identification. Smith requested identification from the two other occupants in the car: Maria Henry, the driver and owner of the vehicle, and Sherrie Brown, the right rear passenger and Brown's wife. Smith then returned to his cruiser to check the three individuals' information in the police computer.
While Smith checked the information, Beall stood at the left rear quarter panel of the car, watching all three occupants of the car. Beall noticed that Brown had three pieces of paper that appeared to Beall to be court-related or law enforcement-related documents that were stapled together. Brown folded the papers in half, placed an item inside the fold of the papers, and placed the papers on the seat between himself and Mrs. Brown.
Smith returned to the car and informed Beall that there was a warrant for Brown's arrest. The officers asked Brown to exit the vehicle, informed him of the warrant, handcuffed him, and placed him in one of the cruisers. Beall then returned to the car and asked the other two occupants to exit the vehicle so that he could recover the papers. Upon retrieving the papers, he looked inside them and found a baggie of crack cocaine. Subsequently, Mrs. Brown was also arrested on an outstanding warrant.
The defense's version of the events differed significantly from the state's version. Sherrie Brown testified as follows.
She and Brown were on their way to a restaurant with Maria Henry and Sonny Wood. Wood was driving the car and stopped at 444 Groveland, telling the Browns and Henry that he would be "right back[.]" Wood entered 444 Groveland, then exited and sat on the porch with some other individuals. As Wood began to leave the porch, "somebody yelled, `Police'" and Wood ran back into the house. Brown was not, however, the individual who had yelled because he had never exited the car.
The police officers approached the car and told Henry that someone had reported that the car was stolen. The officers checked Henry's license and registration and also asked the Browns for identification. After the officers found the warrant on Brown, they arrested him. They found the warrant on Mrs. Brown and arrested her. After searching the car, one of the officers returned to Mrs. Brown, who was in one of the police cruisers, and asked her if she knew Sonny Wood. She informed the officer that Wood was one of the individuals who had gone into 444 Groveland. The officer also showed her the papers and a baggie of drugs, and asked her, "[W]hose drugs are these?" She informed him that the drugs did not belong to her or to Brown, and that she had never seen the drugs or papers before. The papers in which the baggie had been hidden were a "records check" on Wood.
On April 29, 1999, Brown was indicted for possessing crack cocaine in an amount between five and ten grams in violation of R.C. 2925.11(A). He filed a motion to suppress the evidence, arguing that the search was not authorized by a warrant and thus was conducted in violation of his constitutional rights. A suppression hearing was held on July 30 and August 2, 1999. The trial court granted his motion to suppress on September 8, 1999.
The state advances one assignment of error on appeal.
 THE TRIAL COURT COMMITTED ERROR WHEN IT GRANTED APPELLEE'S MOTION TO SUPPRESS, SINCE APPELLEE'S INITIAL DETENTION WAS LAWFUL UNDER TERRY AND, ALTERNATIVELY, BY THE OFFICERS' DISCOVERY OF AN OUTSTANDING WARRANT FOR APPELLEE'S ARREST, AND THE SEARCH WAS VALID AS INCIDENT TO A LAWFUL ARREST.
The state raises three issues on appeal. First, the state claims that Beall had possessed sufficient reasonable and articulable suspicion that Brown had been engaged in criminal activity to justify an investigatory detention of him. Second, and in the alternative, the state argues that even if the detention had been unlawful, the officers' subsequent discovery of an outstanding warrant for Brown had justified his detention and arrest. Third, the state asserts that the lawful arrest had justified Beall's search of the car and seizure of the crack cocaine. Although the state did not raise its second and third arguments at trial, we will not disregard them because they change the outcome of the trial court's decision on Brown's motion to suppress and thus that decision constitutes plain error. State v.Ingram (1998), 125 Ohio App.3d 411, 413, 708 N.E.2d 782, 783-784, discretionary appeal not allowed (1998), 82 Ohio St.3d 1411,694 N.E.2d 75, motion for reconsideration denied (1998), 82 Ohio St.3d 1470,696 N.E.2d 226. We will address these arguments in a manner that facilitates our discussion.
In granting the motion to suppress, the trial court found that "Beall did not have the requisite reasonable suspicion to detain and question [Brown]." It further found that even if Brown's initial detention had been lawful, the evidence would still have to be suppressed because its incriminating character had not been immediately apparent and thus its seizure had not been lawful under the plain view doctrine.
The state argues that even if Beall's initial detention of Brown was unlawful, the discovery of a warrant for Brown justified his detention and subsequent arrest.
We have consistently held that regardless of whether a police officer's initial stop of an individual was unlawful, the discovery of an outstanding warrant for that individual justifies his arrest. Dayton v. Click (Oct. 5, 1994), Montgomery App. No. 14328, unreported, at *2, discretionary appeal not allowed (1995),71 Ohio St.3d 1477, 645 N.E.2d 1257; State v. Meyers (May 31, 1995), Montgomery App. No. 14856, unreported, at *1, discretionary appeal not allowed (1995), 74 Ohio St.3d 1418, 655 N.E.2d 738;Ingram, 125 Ohio App.3d at 413-414, 708 N.E.2d at 783-784; Statev. Pierson (1998), 128 Ohio App.3d 255, 258, 714 N.E.2d 461, 463, discretionary appeal not allowed (1998), 83 Ohio St.3d 1452,700 N.E.2d 334. But, see, State v. Lynch (May 6, 1998), Montgomery App. No. 17028, unreported, at *5 (holding that although a person with an outstanding warrant "is subject to a wide open stop and arrest" under that warrant, the existence of such warrant does not retroactively validate an unconstitutional intrusion and seizure of evidence which occurred prior to the valid arrest under the warrant); State v. Anderson (Jan. 8, 1999), Montgomery App. No. 17205, unreported, at *4 (noting that Lynch "limited the [Click
and] Meyers line of cases by holding that evidence unconstitutionally seized prior to a valid arrest under an outstanding warrant is subject to suppression"). Further, there is no violation of an individual's privacy rights simply because the police officers were not aware of the individual's outstanding warrant at the time they initiated the stop. Click, at *2;Meyers, at *1; Ingram, 125 Ohio App.3d at 413,708 N.E.2d at 783; Pierson, 128 Ohio App.3d at 258, 714 N.E.2d at 461.
When Brown was stopped by Beall and Smith, there was an outstanding warrant for his arrest. Thus, although the initial stop may have been unlawful, and the officers did not discover the warrant until after they had initiated the stop, the warrant justified Brown's arrest. Thus, this part of the state's argument is persuasive.
Because we have determined that Brown's arrest was valid, we need not address the first part of the state's argument regarding the issue of whether Beall possessed sufficient reasonable and articulable suspicion to justify his initial detention of Brown.Meyers, at *1.
The state next argues that the lawful arrest of Brown justified Beall's search of the car and seizure of the baggie of crack cocaine.
The Fourth Amendment bars unreasonable searches and seizures.Maryland v. Buie (1990), 494 U.S. 325, 331, 110 S.Ct. 1093, 1096
(citation omitted). The exclusionary rule bars admission of evidence which is obtained as a direct result of a constitutional violation. Wong Sun v. United States (1963), 371 U.S. 471, 485,83 S.Ct. 407, 416, State v. Clary (Sept. 30, 1996), Lawrence App. No. 96CA7, unreported, at *3. Warrantless searches are per se
unreasonable unless they fall within a carefully defined group of exceptions. Katz v. U.S. (1967), 389 U.S. 347, 357, 88 S.Ct. 507,514. One of these exceptions is a search incident to a lawful arrest. State v. Akron Airport Post No. 8975 (1985), 19 Ohio St.3d 49,51, 482 N.E.2d 606, 608, certiorari denied (1986),474 U.S. 1058, 106 S.Ct. 800.
In Chimel v. California (1969), 395 U.S. 752, 89 S.Ct. 2034, the Supreme Court defined the permissible scope of a search incident to arrest. The Court stated, "When an arrest is made, * * * [t]here is ample justification * * * for a search of the arrestee's person and the area within his immediate control-construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence."Chimel, 395 U.S. at 762-763, 89 S.Ct. at 2040 (quotation omitted).
The Court applied Chimel to the search of an automobile incident to the arrest of one of its occupants in New York v.Belton (1981), 453 U.S. 454, 101 S.Ct. 2860. In Belton, the Court concluded that when a police officer has made a valid arrest of an occupant of an automobile, the officer "may, as a contemporaneous incident of that arrest, search the passenger compartment of the automobile" and any containers within the passenger compartment because articles within the passenger compartment are within the area where an arrestee might reach to grab a weapon or an evidentiary item. Belton, 453 U.S. at 460, 101 S.Ct. at 2864.
The Ohio Supreme Court limited Belton in State v. Brown
(1992), 63 Ohio St.3d 349, 588 N.E.2d 113, certiorari denied (1992), 506 U.S. 862, 113 S.Ct. 182. In Brown, a police officer arrested the defendant for driving under the influence of alcohol, placed the defendant in his cruiser, and then searched the defendant's car. Brown, 63 Ohio St.3d at 349, 588 N.E.2d at 113. During the search, the officer opened the glove compartment of the vehicle and found a wooden box. Id. Upon opening the box, the officer found LSD. Id. The supreme court ruled that the search of the wooden box was unlawful, because when the officer searched the vehicle, the defendant had already been placed in the police cruiser and thus, "[t]he contents of the automobile were no longer within the [defendant's] immediate control." Id. at 352-353,588 N.E.2d at 115-116.
Brown argues that the Brown case is controlling because "[Brown], Mrs. Brown, and Maria Henry were all removed from the vehicle at the time the vehicle was searched [and thus,] [n]o one * * * could have gained possession [of] or destroyed the evidence." Brown thus claims that pursuant to Brown, Beall's search of the vehicle was unlawful and the resulting evidence should have been suppressed.
The Brown case is distinguishable from the case currently before us, as is demonstrated by the syllabus of that case:
 A police officer may not open a small, closed container found inside an automobile's glove compartment solely as a search incident to the driver's arrest for a traffic violation, after the officer has the suspect — and sole occupant of the vehicle — under control in the police cruiser.
(Emphasis added.) Brown, at syllabus. Brown was not the sole occupant of the vehicle in this case, as his wife and Henry were occupants of the car as well.
Since Brown, other courts have addressed cases involving the search of an automobile where some of its occupants were not in police custody. In Sherred, a police officer stopped an automobile with two occupants for erratic driving, discovered that the driver's license was suspended, and arrested the driver.State v. Sherred (June 6, 1994), Richland App. No. 93-71, unreported, at *1. After asking the passenger to exit the vehicle, the officer searched the vehicle and discovered marijuana. Id. The court held that because the officer had planned to allow the passenger to reenter the vehicle and leave the scene, he "had sufficient justification to search the area in the vehicle wherein [the passenger] might gain possession of a weapon upon her release." Id. at *2.
In May, two police officers stopped two trucks for speeding and arrested one of the drivers because his license had expired.State v. May (Jan. 18, 1995), Washington App. No. 93CA23, unreported, at *1. The passenger in that vehicle was removed and the officers searched the truck and found weapons. Id. The passenger was then allowed to reenter that truck and leave the scene. Id. The court held that because the passenger "would be returning to the truck and would have access to any weapons therein and could pose a danger to the deputies * * * the search performed by the officers * * * constitute[d] a lawful search incident to arrest." Id. at *6. See, also, State v. Lowry (June 17, 1997), Ross App. No. 96CA2259, unreported, at *3 (finding that the search of a vehicle, after its occupants had been removed and the police officer had determined that he would not be allowing any of them back into the vehicle to leave the scene, did not fall within the search incident to arrest exception because "[n]one of the vehicle's previous occupants would have had an opportunity to gain a weapon or destructible evidence from the vehicle at [that] point").
The state argues that "[a]lthough Sherred and May * * * concerned the risk that another individual not in custody may gain access to a weapon, it is significant that a search incident to arrest is not limited to a search for weapons, but includes a search for evidence in order to prevent its concealment or destruction" and cites Chimel in support of this argument. We agree. In Chimel, the Court created the search incident to arrest exception because it was concerned about an arrestee's ability to gain possession of a weapon or destructible evidence. Chimel,395 U.S. at 762-763, 89 S.Ct. at 2040. Although the Sherred and May
courts were concerned that unless the vehicle was searched, the other occupants might gain access to a weapon upon reentry, we are not persuaded by those cases to limit such a search to weapons. Indeed, Lowry, supra, appears to recognize that a search under these circumstances may be for destructible evidence as well as weapons. In this case, unless Beall had searched the car, Mrs. Brown or Henry could have reentered the car and destroyed the evidence. As Chimel created the search incident to arrest exception to allow officers to search for weapons and destructible evidence, we conclude that Beall was permitted to search the car for weapons and destructible evidence before allowing Mrs. Brown and Henry to reenter the vehicle. Thus, although he did not think that Brown had placed a weapon in the papers, Beall's search of the papers for destructible evidence was lawful. Beall's seizure of the baggie of crack cocaine that he found between the papers was therefore lawful as well. The trial court erred in granting Brown's motion to suppress.
The assignment of error is sustained.
The judgment of the trial court will be reversed and remanded for further proceedings consistent with this opinion.
GRADY, P.J. and FAIN, J., concur.
Copies mailed to:
Kirsten A. Davies
John P. Hilgeman
HON. DAVID G. SUNDERLAND