OPINION
Defendant, Stanley Williams, appeals from his conviction for possession of heroin, R.C. 2925.11(A), and the sentence imposed on his conviction pursuant to law, which were entered on Williams' plea of no contest after the trial court denied his motion to suppress evidence.
The evidence that Williams sought to suppress was heroin which police recovered in a search of his person incident to his arrest on an outstanding warrant. Williams did not challenge the validity of the warrant. Instead, he argued that his stop by police, which confirmed that he was the subject of an outstanding warrant, failed to satisfy the reasonable and articulable suspicion standard which Terry v. Ohio
(1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, imposes.
The trial court heard evidence on Williams' motion and thereafter overruled the motion on a finding that police had reasonable and articulable suspicion to stop Williams on the basis of an anonymous tip they'd corroborated. The court did not address the effect of the outstanding warrant., Defendant has timely appealed to this court from his conviction and sentence, challenging the trial court's order overruling of his motion to suppress evidence.
 ASSIGNMENT OF ERROR THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION TO SUPPRESS EVIDENCE SEIZED AS A RESULT OF HIS UNLAWFUL DETENTION IN VIOLATION OF HIS RIGHT TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURES.
The trial court found the following facts as a basis for its legal conclusion:
 An anonymous tip was received by Detective K. Bollinger of the Dayton Police Force Drug Interdiction Unit whose responsibility is the interception of narcotics coming into Southwest Ohio via the transportation hubs. Bollinger testified that the April 22, 2000, tip specified that Stanley Williams would be arriving from New York City at the Greyhound Bus Station in Dayton, Ohio on April 23, 2000 at 9:00 a.m. The physical description was: black male; 6'7"; 220 pounds; wearing a brown leather jacket, a black and white Dale Earnhardt hat with the number three on it; around fifty years old. Additional information concerned the one hundred grams of heroin Stanley Williams would be carrying taped to his lower back and information regrading an active warrant.
 Detective Bollinger verified the information through the Dayton Police Department Records Section receiving additional identifiers of a social security number and date of birth. Also verified was the active warrant out of Beavercreek under the name of Stanley Wilson with identical social security number and date of birth.
 Further verification was arranged in the form of observation of the arrival of the 9:00 a.m. bus from New York to ascertain if any passengers matched the physical description. The further investigation was warranted, according to Detective Bollinger, because based on his years of experience and specialization in drug interdiction, persons are arrested under different last names but when the social security number and date of birth are consistent, it is the same person with merely an alias.
 Detective Lubonovic and Detective Logan observed the defendant, who matched the description even to the Dale Earnhardt cap, exit the 9:00 a.m. Greyhound bus from New York. Once Detective Lubonovic showed his badge and identified himself, Defendant agreed to talk to him. Conversation with Defendant as he was entering the terminal verified Defendant's name, social security number, date of birth, and the active warrant which Defendant acknowledged. He was arrested on the active warrant., Defendant, Williams, was searched pursuant to the arrest by lifting the back of his jacket up and locating the white baggie protruding from Defendant's pants. When Defendant responded that it was "dope," he was twice advised of his Miranda rights. The defendant's interview again verified caller-in information.
Additionally, the trial court also found these facts:
 An anonymous telephone tip was received by Dayton Police Officer Gary Lowe. Officer Lowe relayed the substance of that phone call to Det. Bollinger who in turn advised Det. Lubonovic and Det. Logan of same. Det. Bollinger verified through the Dayton Police Department records section, prior to the arrival of the bus, that an active arrest warrant existed for a Stanley Wilson (not Williams) who had the exact same social security number and date of birth as Defendant Stanley Williams, the person referred to in the tip.
When it rules on a motion to suppress evidence the trial court acts as the trier of facts and determines the credibility of the witnesses and the weight to be given to their testimony. State v. Fanning (1982),1 Ohio St.3d 19, State v. Satterwhite (1997), 123 Ohio App.3d 322. In reviewing a trial court's decision on a motion to suppress, the appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. The appellate court must then independently determine as a matter of law, without deference to the trial court's legal conclusion, whether those facts meet the applicable legal standard. Satterwhite, supra.
The evidence that Defendant sought to suppress was seized incident to his arrest. Evidence seized incident to a valid arrest is not subject to suppression. Chimel v. California (1969), 395 U.S. 572 89 S.Ct. 2034,23 L.Ed.2d 685. Defendant attacks his arrest as invalid, arguing that police lacked a reasonable and articulable suspicion of criminal activity necessary to justify the stop that led to his arrest. Terry v. Ohio,supra. Defendant argues that the stop was the product of an anonymous phone tip which, without more, is insufficient to authorize a stop. SeeFlorida v. J.L. (2000), 529 U.S. 266; State v. Riley (2001),141 Ohio App.3d 409.
The record in this case amply demonstrates that police possessed much more than a mere anonymous tip at the time they stopped Defendant. More importantly, however, Defendant's arrest was not subject to the Fourth Amendment standards he seeks to apply.
When analyzing search and seizure issues, the threshold question is whether the Fourth Amendment applies. If the amendment is applicable, a warrant and probable cause are required. Because the Fourth Amendment provides that "no warrants shall issue, but upon probable cause," a facially valid warrant must be presumed to have been issued upon probable cause. Crim.R. 4(D) directs its execution "by any officer authorized by law". . ."at any place within this state." Evidence the officer then seizes when executing the warrant is not subject to suppression where the officer acted in objectively reasonable, good faith reliance on the authority of the warrant. State v. Wilmoth (1986), 22 Ohio St.3d 251.
The "reasonable and articulable suspicion" standard announced in Terryv. Ohio, supra, applies to investigative searches ("pat-downs") and seizures ("stops") performed by law enforcement officers acting without either a warrant or probable cause to believe that a crime has been committed. An officer who acts pursuant to the commands of a valid warrant is not required to have either independent probable cause or a reasonable and articulable suspicion, but only a valid warrant.
Both the "reasonable and articulable suspicion" standard of Terry and the "objectively reasonable" standard of Wilmoth require consideration of the facts and circumstances involved, in their totality. Execution of a valid warrant does not require any indicia of criminal activity, however, as a Terry stop does. It requires only an objectively reasonable belief that the person whom the officer seizes is the subject named in the warrant. When the subject of an arrest warrant is not known personally by the officer who executes the warrant, the issue presented is whether the officer's conduct in identifying the subject in order to execute the warrant is objectively reasonable. Wilmoth, supra.
Because an arrest pursuant to a warrant is presumed to be reasonable, it is not per se unreasonable. Therefore, and in contrast to warrantless arrests, it is the burden of a defendant who seeks to exclude evidence the officer seizes incident to the arrest to show that the officer's conduct was not objectively reasonable or that the warrant was not executed in good faith. For example, an unsigned warrant, being voidabinitio, cannot be executed in good faith. State v. Williams (1991),57 Ohio St.3d 24.
Here, the officers verified the existence of a valid judicial warrant commanding them to arrest a Stanley Wilson (not Williams), whose date of birth, social security number and physical description matched the subject of the tip they received. Acting on that tip that the Defendant would be at a certain place at a certain time, the officers appeared there and detained a man whose description matched exactly the description in the tip. Upon inquiry, the Defendant admitted his identity and acknowledged the outstanding warrant for his arrest, whereupon the officers arrested him. Their conduct was objectively reasonable. That, plus the existence of the valid warrant, avoids any need to inquire whether the officers possessed either probable cause or a reasonable and articulable suspicion of criminal activity. State v. Pierson (1998),128 Ohio App.3d 255. Their arrest of the Defendant was not unreasonable for Fourth Amendment purposes, and the evidence officers seized from his person in a search incident to his arrest is not subject to suppression.Chimel v. California, supra.
The assignment of error is overruled. The judgment of the trial court will be affirmed.
BROGAN, J. and YOUNG, J., concur.