OPINION
{¶ 1} Defendant-appellant, Joseph Barker, appeals from a Jefferson County Common Pleas Court judgment convicting him of one count of possessing crack cocaine and one count of possessing powder cocaine, following a jury trial.
 {¶ 2} In August 2004, Steubenville police officers monitored a drug sale by Josea Brown. Appellant was observed in Brown's car immediately after the transaction. The next day, police officers executed a search warrant at 2803 Sunset Boulevard, apartment number one in Steubenville. Appellant shared that apartment with Brown. When the officers entered the apartment, they found appellant and Brown sitting on the couch. Next to appellant, the officers found a small package containing crack cocaine and the remnants of powder cocaine. Additionally, sitting on the dining room table in plain view, the officers found a large bag of crack cocaine, a bag of powder cocaine, two cellular phones, and a digital scale covered with cocaine residue. On the kitchen counter, they found another digital scale. The officers immediately arrested appellant and Brown.
 {¶ 3} A Jefferson County grand jury indicted appellant on one count of possession of crack cocaine in an amount greater than 25 grams but less than 100 grams, a first degree felony in violation of R.C. 2925.11(A)(C)(4)(e), and one count of possession of cocaine in an amount greater than five grams but less than 25 grams, a fourth degree felony in violation of R.C.2925.11(A)(C)(4)(b).
 {¶ 4} The case proceeded to a jury trial on April 26, 2005. The jury returned guilty verdicts on both counts. The trial court subsequently sentenced appellant to nine years in prison on count one and 11 months in prison on count two, to be served concurrently. Appellant filed a timely notice of appeal on May 19, 2005.
 {¶ 5} Appellant raises three assignments of error, the first of which states:
 {¶ 6} "THE PROSECUTOR'S USE OF A PEREMPTORY CHALLENGE TO EXCUSE THE ONLY BLACK JUROR ON THE PROSPECTIVE JURY PANEL, WITHOUT PROVIDING ANY PLAUSIBLE RACE-NEUTRAL JUSTIFICATION, DENIED DEFENDANT, WHO WAS ALSO BLACK, HIS CONSTITUTIONAL RIGHT TO EQUAL PROTECTION."
 {¶ 7} Appellant argues that appellee failed to provide a valid, race-neutral reason as required by Batson v. Kentucky
(1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69, for excluding a potential minority juror. He contends that the reasons put forth by the prosecutor for excusing the only African American on the jury panel were a pretext. Appellant asserts that the prosecutor's failure to question the prospective juror about the subject of her purported concern suggests that matter of concern was not the real reason for the challenge. Citing Miller-el v.Dretke (2005), ___ U.S. ___, 125 S.Ct. 2317, 162 L.Ed.2d 196.
 {¶ 8} A prosecutor violates the Equal Protection Clause of the United States Constitution when she uses peremptory challenges to purposefully exclude members of a minority group because of their race. Batson, 476 U.S. at 85-86.
 {¶ 9} The Ohio Supreme Court has set out the steps for analyzing a Batson challenge as follows:
 {¶ 10} "First, the opponent of the peremptory strike must make a prima facie case of racial discrimination. Second, if the trial court finds that the opponent has fulfilled this requirement, then the proponent of the strike must come forward with a racially neutral explanation for the strike. The `explanation need not rise to the level justifying exercise of a challenge for cause.'
 {¶ 11} "Third, if the proponent puts forward a racially neutral explanation, the trial court must decide, on the basis of all the circumstances, whether the opponent has proved purposeful racial discrimination. The burden of persuasion is on the opponent of the strike." (Internal citations omitted.) State v.Herring, 94 Ohio St.3d 246, 255-56, 762 N.E.2d 940,2002-Ohio-796.
 {¶ 12} An appellate court will not reverse the trial court's decision of no discrimination unless it is clearly erroneous.State v. Hernandez (1992), 63 Ohio St.3d 577, 583,589 N.E.2d 1310. Because these issues turn largely on evaluations of credibility, trial judges supervising voir dire are best equipped to resolve discrimination claims in jury selection. Hicks v.Westinghouse Materials Co. (1997), 78 Ohio St.3d 95, 102,676 N.E.2d 872, citing Batson, 476 U.S. at 98, fn. 21.
 {¶ 13} In this case, the jury venire contained only one African American, Ms. Willis. The prosecutor used her first peremptory challenge to excuse a white prospective juror. She used her second peremptory challenge to excuse Ms. Willis.
 {¶ 14} The prosecutor questioned Ms. Willis before excusing her. The prosecutor noted that she learned from Ms. Willis's questionnaire that she was a Steubenville City school teacher. (Tr. 20). The prosecutor also noted that Ms. Willis had indicated on her questionnaire that she had previously testified on behalf of a student. (Tr. 21). Upon questioning, Ms. Willis stated that the case in which she testified was a robbery case and that she testified because she knew the student as a person, not because she witnessed the crime. (Tr. 21). That was the extent of the questioning.
 {¶ 15} Before either party exercised any of their peremptory challenges, the court called a side bar. It reminded the parties that there was only one black potential juror. (Tr. 25). The court then informed the prosecutor that if she were to exercise a peremptory challenge against the only black potential juror, she would have to give a race-neutral reason for doing so. (Tr. 25-26).
 {¶ 16} The prosecutor advised the court that Ms. Willis was going to be the subject of a peremptory challenge. She then explained her reasons for the challenge. She stated that she reviewed Ms. Willis's questionnaire and found that she was a teacher in the Steubenville City Schools. (Tr. 26). She noted that both appellant and Brown were students in the Steubenville City Schools. (Tr. 26). Furthermore, the prosecutor pointed out that Ms. Willis stated that she had previously testified on behalf of a student not because she was an eyewitness, but because she knew him. (Tr. 26). Additionally, the prosecutor noted that she is a member of the Steubenville City Board of Education. (Tr. 26).
 {¶ 17} Appellant's counsel objected arguing that appellant, who is African American, would not have a jury made up of his peers if the prosecutor excused the only African-American juror. (Tr. 27-28).
 {¶ 18} Appellant met his burden of making a prima facie case of discrimination. Appellee used one of its peremptory challenges to excuse the only African American in the jury pool. Since there was only one potential juror who was African American, the prosecutor's use of a peremptory challenge to excuse her could be viewed as discriminatory.
 {¶ 19} However, the prosecutor put forth a valid, race-neutral explanation for excusing Ms. Willis. The prosecutor stated that the potential juror was a school teacher for the same school district that appellant and Brown had attended and that she had previously testified for a student in a robbery case. Based on this information it is reasonable that the prosecutor did not want Ms. Willis on the jury. Ms. Willis may have been biased in favor of the defendant since he had been a student in her school district, like the one in whose favor she had testified in the past.
 {¶ 20} Furthermore, the prosecutor is a member of the school board in the district in which Ms. Willis taught. This could have biased her one way or another depending on her feelings toward the school board. Oftentimes school teachers have strong feelings about school board members, who may control their pay, benefits, and other aspects of their employment. While it would have been helpful for the prosecutor to have questioned Ms. Willis about her feelings toward the school board, the prosecutor's failure to do so does not necessarily lead to the conclusion that the matter of concern was a pretext as appellant suggests. The trial court was in the best position to determine the prosecutor's sincerity regarding her reasons for the challenge and it concluded that the prosecutor put forth a race-neutral reason for the challenge. Since the prosecutor's explanation for challenging Ms. Willis is understandable, we will not second-guess the trial court's determination. Thus, it was reasonable for the prosecutor to be wary of seating a Steubenville school teacher on the jury.
 {¶ 21} For these reasons, we cannot conclude that the trial court's finding of no discrimination was clearly erroneous. Accordingly, appellant's first assignment of error is without merit.
 {¶ 22} Appellant's second assignment of error states:
 {¶ 23} "IT WAS PREJUDICIAL ERROR FOR THE TRIAL COURT TO PERMIT THE STATE TO INTRODUCE EVIDENCE OF DEFENDANT'S PRIOR CRIMINAL CONDUCT IN VIOLATION OF EVIDENCE RULE 404(B)."
 {¶ 24} Here appellant argues that the trial court erred in permitting appellee to introduce evidence of his prior criminal conduct. Over appellant's objection, the court allowed the prosecutor to question Brown about whether appellant ever drove her car and, if so, whether he might have had illegal drugs with him at the time. Appellant contends that the prosecutor's only reason for this line of questioning was to show the jury that he was the kind of person who carried drugs.
 {¶ 25} The admission and exclusion of evidence are within the broad discretion of the trial court. State v. Mays (1996),108 Ohio App.3d 598, 617, 671 N.E.2d 553. Abuse of discretion is more than a mere error of judgment; it is conduct that is arbitrary, capricious, unreasonable, or unconscionable. State v. Moreland
(1990), 50 Ohio St.3d 58, 61, 552 N.E.2d 894.
 {¶ 26} Evid.R. 404(B) provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 27} The prior bad acts evidence to which appellant objected came during the following testimony by Brown:
 {¶ 28} "Q Did he [appellant] know when you left this apartment and pulled out of here that you were going to go deliver the drugs?
 {¶ 29} "A Yes, ma'am.
 {¶ 30} "Q You were driving that day?
 {¶ 31} "A Yes, ma'am.
 {¶ 32} "Q How come?
 {¶ 33} "A Because I have a license and he don't.
 {¶ 34} "Q He does not have a license?
 {¶ 35} "A Huh-uh.
 {¶ 36} "Q Did that keep him from driving when the two of you were driving at times?
 {¶ 37} "A Well, yeah because if I was dirty, I wouldn't let him drive.
 {¶ 38} "Q When you say if you were dirty, what's that mean?
 {¶ 39} "A If I had drugs on me, I wouldn't let him drive.
 {¶ 40} "Q And why wouldn't you let him drive?
 {¶ 41} "A Because he didn't have a license.
 {¶ 42} "Q Did you think he could then get pulled over easier than you?
 {¶ 43} "A Yeah and I think if you get pulled over and you don't got a license, that's probable cause to search the car.
 {¶ 44} "Q Okay. And you would say they would have probable cause to search. Were you worried at that time if he got pulled over for not having a license they would find drugs on you?
 {¶ 45} "A Uh-huh.
 {¶ 46} "Q Might they have found drugs on him?
 1. "MR. STERN: Objection. {¶ 47} "A Probably." (Tr. 106-107).
 {¶ 48} Appellant compares this case to that of State v.Pierson (1998), 128 Ohio App.3d 255, 714 N.E.2d 461. InPierson, the defendant was convicted of trafficking in drugs. On appeal, Pierson argued that the trial court erred by allowing evidence that he had sold drugs in the past. The Second District agreed with Pierson and reversed his conviction.
 {¶ 49} At trial, the state relied upon the testimony of Leon Fletcher to establish that Pierson sold cocaine to Fletcher on August 2, 1996. The state also elicited testimony from Fletcher concerning previous drug dealings with Pierson. Fletcher testified that several months previously, Pierson asked him if he knew anybody who wanted to buy some coke. Fletcher stated that he knew some people who he referred to Pierson in exchange for money. Fletcher testified that he and Pierson worked out a system where Pierson would come over once a week or Fletcher would page him and Pierson would drop off a quarter or half ounce of drugs. Fletcher would then sell the drugs for Pierson and give him the money. Fletcher also testified that Pierson set the prices for the drugs. And finally, Fletcher testified that this system went on for about a half a year.
 {¶ 50} On appeal, Pierson contended that the introduction of the testimony concerning earlier drug sales, over his objection, violated Evid.R. 404(B). The state argued that the evidence was used to prove the identity of the perpetrator and his criminal purpose. The court found that criminal purpose was not an issue in the case. It pointed out that Pierson's defense was not that he lacked the requisite intent, but that Fletcher was lying and that Pierson did not, in fact, sell cocaine to Fletcher as charged. It also noted that this was not a case involving questionable eyewitness identification — the issue was whether to believe Fletcher's testimony that Pierson sold him cocaine on that occasion. Furthermore, the court reasoned that since the state's proof depended on Fletcher's credibility, his testimony concerning the uncharged prior drug sales added no independent probative value of Pierson's identity as the perpetrator of the charged offense. Thus, the court concluded Fletcher's testimony that Pierson had previously sold him cocaine had no probative force other than the inference forbidden by Evid.R. 404(B).
 {¶ 51} Generally, evidence of other crimes, wrongs or bad acts independent or unrelated to the offense for which a defendant is on trial is inadmissible to show criminal propensity. State v. Wickline (1990), 50 Ohio St.3d 114, 120,552 N.E.2d 913. However, R.C. 2945.59 provides:
 {¶ 52} "In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."
 {¶ 53} This case is distinguishable from Pierson. Here appellant's defense was that the drugs belonged to Brown, not to him. He attempted to persuade the jury that he had no control over and nothing to do with Brown's drug use and sales. It seems likely that appellee used the above evidence to demonstrate appellant's participation in the life of drugs with his girlfriend. Appellee's case was based upon the theory that appellant and Brown were a team — they were girlfriend and boyfriend, they lived together, they hung out together, they used drugs together, and they sold drugs together. Brown's statement that appellant probably had drugs on him in the past when they were driving together tends to show absence of mistake or accident on appellant's part. Appellant contended at trial that the drugs belonged to Brown and that he had nothing to do with them, basically claiming that he was an innocent bystander. However, by demonstrating that appellant and Brown used drugs together and carried drugs together in the past, appellee was able to show that appellant was well aware of, and participated in, drug activity with Brown and that generally they shared drugs. This also shows their system in doing the acts in question. This would tend to show that the drugs found in their apartment belonged to both appellant and Brown and not solely to Brown as appellant claimed. Thus, the trial court did not abuse its discretion in overruling appellant's objection to Brown's testimony.
 {¶ 54} Even if the trial court had improperly admitted the evidence, any error would have been harmless. The admission of prior bad acts evidence is harmless unless there is some reasonable probability the evidence contributed to the defendant's conviction. City of Columbus v. Taylor (1988),39 Ohio St.3d 162, 166, 529 N.E.2d 1382, citing State v. Lytle
(1976), 48 Ohio St.2d 391, 358 N.E.2d 623, paragraph three of the syllabus, vacated on other grounds in (1978), 438 U.S. 910,98 S.Ct. 3135, 57 L.Ed.2d 1154. Based on all of the other evidence, the jury would have likely still found appellant guilty.
 {¶ 55} Detective John Lemal testified that when he and the other officers executed the search warrant, appellant and Brown were sitting on the couch. Next to appellant, on the armrest, was a piece of crack cocaine on a piece of brown paper along with a torn baggie with white residue in it. (Tr. 65-66). On the kitchen table, which was five to six feet behind the couch where appellant and Brown were sitting, the officers found a bag of powder cocaine, a bag of crack cocaine, a digital scale with cocaine residue on it, and both appellant's and Brown's cellular phones. (Tr. 697-0).
 {¶ 56} Additionally, Brown testified that when she made the sale to the police informant, appellant was with her and knew what she was doing. (Tr. 105). She further testified that immediately before the officers executed the search warrant, she and appellant were watching television and snorting powder cocaine. (Tr. 107-108). Brown testified that the cocaine found on the armrest was for both her and appellant's personal use. (Tr. 108). Next, Brown testified that she and appellant used the digital scales to make sure they "don't get beat" when they buy drugs. (Tr. 111). Furthermore, Brown stated that the items found on the kitchen table, including the bags of powder cocaine and crack cocaine, were free to be used by either her or appellant. (Tr. 113). She stated that they both used the items. (Tr. 113). Brown continued by stating that the drugs were there for both of them and either one of them could control them. (Tr. 113-14). She then testified that appellant did use and control the drugs on the table. (Tr. 113). When asked whose drugs Brown considered the drugs found on the table to be, she responded, "[b]oth of ours." (Tr. 114-15).
 {¶ 57} The evidence also demonstrated that appellant and Brown shared the apartment. (Tr. 73, 100, 142, 144-45, 175, 179, 184, 197).
 {¶ 58} Based on this evidence, the jury would have convicted appellant whether or not the trial court admitted the alleged objectionable evidence.
 {¶ 59} Accordingly, appellant's second assignment of error is without merit.
 {¶ 60} Appellant's third assignment of error states:
 {¶ 61} "IT WAS PREJUDICIAL ERROR FOR THE TRIAL COURT TO GIVE THE JURY CONFLICTING AND MISLEADING INSTRUCTIONS REGARDING POSSESSION."
 {¶ 62} Appellant takes issue with the following jury instructions:
 {¶ 63} "Possession. Possession of drugs is an essential element of this offense. Possession is voluntary — is a voluntary act if the possessor knowingly procured or received the drugs or was aware of his control thereof for a sufficient period of time to have ended his possession.
 {¶ 64} "A person has possession when he knows that he had the object on or about his person or property or places it where it is accessible to his use or direction and he had the ability to direct or control its use. A person may have possession of an object even if it is not within his own physical reach.
 {¶ 65} "Joint possession. Two or more persons may have possession if together they have the ability to control it exclusive of others.
 {¶ 66} "Ownership. Ownership is not necessary. A person may possess or control property belonging to another.
 {¶ 67} "Possess means having control over a substance or thing but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." (Tr. 2606-1).
 {¶ 68} Appellant argues that these instructions are in conflict with each other and with case law and statutes pertaining to drug possession. Specifically, he argues that the phrase, "having the ability to control," which the trial court used twice, is different from "having control over a thing or substance," which R.C. 2925.01(K) uses to define possession. He argues that by instructing the jury that the state only needed to prove the ability to control, the trial court lessened the state's burden of proof and prejudiced him. Appellant further contends that this prejudice was worsened by the instruction on joint possession because it allowed the jury to infer that he had the ability to control the drugs solely through his joint occupation of the apartment with Brown, who freely admitted her control of the drugs.
 {¶ 69} The decision to give or refuse to give jury instructions is within the trial court's sound discretion. Statev. McCleod (Dec. 12, 2001), 7th Dist. No. 00-JE-8, citing Statev. Wolons (1989), 44 Ohio St.3d 64, 68, 541 N.E.2d 443. Thus, we will not reverse a conviction on this basis absent a trial court's abuse of discretion. Furthermore, we must consider the jury instructions as a whole and not view a single portion in isolation. State v. Jalowiec (2001), 91 Ohio St.3d 220, 231,744 N.E.2d 163.
 {¶ 70} Appellant relies on State v. Haynes (1971),25 Ohio St.2d 264, 270, 267 N.E.2d 787, for support where the Ohio Supreme Court stated:
 {¶ 71} "The mere fact that one is the owner or lessee of premises upon which narcotics are found-where such premises are also regularly occupied by others as co-tenants and the narcotics are found in an area ordinarily accessable [sic.] to all tenants-is not, without further evidence, sufficient to establish possession in the owner or lessee.
 {¶ 72} "When narcotics are discovered in the general living area of jointly occupied premises, one can only speculate as to which of the joint occupiers have possession of the narcotics. In other words, no inference of guilt in relation to any specific tenant may be drawn from the mere fact of the presence of narcotics on the premises."
 {¶ 73} Haynes is distinguishable from this case however. Firstly, in Haynes, the defendant shared the premises with three other people and more importantly he had not been present on the premises for one week prior to the search that turned up the drugs. Secondly, the only evidence connecting the defendant to the drugs in Haynes was that he was a lessee of the premises. But in this case appellant was present in the apartment immediately prior to and during the search. Furthermore, cocaine was located right next to him. And other evidence was presented by Brown that the drugs belonged to both her and appellant. Courts have found constructive possession when the drugs are in plain view in an area shared with another. State v. Givens, 2d Dist. No. 2005-CA-42, 2005-Ohio-6670, at ¶ 10, citing State v.Boyd (1989), 63 Ohio App.3d 790, 580 N.E.2d 443. Thus, appellant's reliance on Haynes is misplaced.
 {¶ 74} Appellant further relies on R.C. 2925.01(K), which provides: "`Possess' or `possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."
 {¶ 75} But in State v. Perry, 8th Dist. No. 84397,2005-Ohio-27, the defendant also took issue with the trial court's instruction of "possession." He, like appellant, argued that the sole definition of possession should be the definition provided by R.C. 2925.01(K). The Eighth District disagreed pointing out that possession can be either actual or constructive. Id. at ¶ 69. The court reasoned that possession can be established as actual physical possession or constructive possession where the contraband is under the defendant's dominion or control. Id. at ¶ 70. It then went on to state:
 {¶ 76} "It [possession] may not be inferred, however, solely from mere access to the substance through ownership or occupation of the premises upon which the substance is found. Similarly, mere proof of presence in the vicinity of illicit drugs is insufficient to establish possession. Finally, the mere fact that one is the owner or lessee of premises upon which illicit drugs are found, such premises are also regularly occupied by others, and the drugs are found in an area accessible to all occupants, possession cannot be imputed to the owner or lessee. Knowledge of illegal goods on one's property is sufficient to show constructive possession. We find no error, given that the instruction on constructive possession was proper." (Internal citation omitted.) Id. at ¶ 71.
 {¶ 77} Thus, because the state can prove possession by demonstrating that the defendant had actual or constructive possession, the appellate court found that the trial court was not limited to the definition of possession set out in R.C.2925.01(K).
 {¶ 78} The same rationale appears in this case. Here, it was never alleged that appellant had actual possession of the drugs. The case centered on appellant's constructive possession of the drugs. The officers found the drugs sitting next to appellant and on the kitchen table located five to six feet behind him. No drugs were found on his person. But "readily usable drugs found in very close proximity to a defendant may constitute circumstantial evidence and support a conclusion that the defendant had constructive possession of such drugs." Statev. Kobi (1997), 122 Ohio App.3d 160, 174, 701 N.E.2d 420. The court's instructions to the jury relayed this. Furthermore, the court made certain to instruct the jury that appellant's mere access to a thing or substance, through ownership or occupation of the premises upon which the thing or substance is found, could not lead to an inference of possession.
 {¶ 79} Therefore, the trial court did not abuse its discretion in giving the jury the above cited instructions. Accordingly, appellant's third assignment of error is without merit.
 {¶ 80} For the reasons stated above, the trial court's judgment is hereby affirmed.
Vukovich, J., concurs
DeGenaro, J., concurs in judgment only. See concurring opinion.