[Cite as *State v. Russell*, **2012-Ohio-422.**]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

STATE OF OHIO            :

                           :      Appellate Case No. 24443

       Plaintiff-Appellee        :

                           :      Trial Court Case No. 04-CR-3840/2

v.                            :

                           :

JAMES A. RUSSELL       :     (Criminal Appeal from

                           :       Common Pleas Court)

       Defendant-Appellant     :

                           :

. . . . . . . . . .

# O P I N I O N

Rendered on the     3rd     day of     February     , 2012.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by R. LYNN NOTHSTINE, Atty. Reg. #0061560, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

ROBERT A. BRENNER, Atty. Reg. #0067714, Post Office Box 341021, Beavercreek, Ohio 45434-1021
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

FAIN, J.

{¶ 1} Defendant-appellant James A. Russell appeals from his conviction and sentence on one count of Aggravated Robbery, with a firearm specification, one count of Felony Murder, with a firearm specification, one count of Tampering with Evidence, one count of Grand Theft of a Motor Vehicle, with a firearm specification, one count of Gross Abuse of a Corpse, and one count of

Having a Weapon Under a Disability. The Having a Weapon Under a Disability charge was tried without a jury. The other convictions were as a result of a jury verdict.

{¶ 2}  Following the reversal of Russell's convictions and sentences after his second appeal, we remanded this cause for a full hearing under *Batson v. Kentucky* (1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69. *State v. Russell*, 2d Dist. Montgomery No. 23454, 2010-Ohio-4765 (*Russell III*). Russell contends that the trial court erred, at that hearing, by concluding that he had failed to establish a prima facie case for racial discrimination in the State's exercise of a peremptory challenge to excuse one of two African-Americans from the jury. Russell is African-American. In the alternative, Russell contends that his counsel at that hearing was constitutionally ineffective for having failed to make the arguments at that hearing that Russell now makes on appeal.

{¶ 3}  We conclude that the trial court did err in finding that Russell had failed to establish a prima facie case for racial discrimination in the State's exercise of its peremptory challenge. Therefore, we need not consider Russell's alternative contention that his counsel was ineffective. The judgment of the trial court is Reversed, and this cause is Remanded for further proceedings as specified herein.

## I.  The First Trial and Appeal.

{¶ 4}  The facts leading up to the charges against Russell are laid out in *State v. Russell,* 2d Dist. Montgomery No. 21458, 2007-Ohio-137 (*Russell I*). In *Russell I*, we affirmed Russell's convictions and sentences. We later permitted Russell to re-open his appeal. In resolving Russell's re-opened appeal we held that the trial court erred when it failed to declare a mistrial when it was discovered that a verdict form for the count of Having Weapons While Under a

Disability, which was to be tried to the bench, had inadvertently been sent back into the jury room with the jury. *State v. Russell*, 2d Dist. Montgomery No. 21458, 2008-Ohio-774 (*Russell II*). We reversed the judgment and remanded the cause for a new trial.

## II. The Peremptory Challenge at the Second Trial, and the Subsequent Appeal.

{¶ 5} At Russell's second trial, it appears that only three African-Americans were among the pool of potential jurors subject to voir dire. It is clear that one African-American in fact served on the jury and participated in the verdict. One other was challenged for cause without objection by Russell. The remaining African-American prospective juror, who was sometimes referred to as Prospective Juror No. 9 during her individual voir dire, was the subject of the State's third and final peremptory challenge, which resulted in the following colloquy:

{¶ 6} THE COURT: Juror Number 9 excused by the State for their third peremptory, to be replaced by Juror Number 23.

{¶ 7} [PROSECUTOR] TANGEMAN: Mr. Chase, correct?

{¶ 8} THE COURT: I will-

{¶ 9} [DEFENSE COUNSEL] HAIRE: Judge-

{¶ 10} THE COURT: I will note for the record, I don't think we can even get to the possibility of a Batson challenge at this point, because in order to get to that you have to have a pattern of excuse of African Americans. And we don't have a pattern yet, because this is the first African American who has been excused other than for cause by the State. But I will make a note of that for the record.

{¶ 11} [DEFENSE COUNSEL] HAIRE: Thank you.

{¶ 12} THE COURT: Uh-huh.

{¶ 13} [PROSECUTOR] DAIDONE: And the record should also note there is another African American on the jury.

{¶ 14} THE COURT: There is.* * *

{¶ 15} In *Russell III*, we held that the trial court had erred in concluding that a *Batson* challenge could not be considered when only one African-American had been the subject of a peremptory challenge. 2008-Ohio-774, at ¶ 20. We inferred from the above-quoted colloquy that defense counsel had been attempting to articulate a *Batson* objection when the trial court cut her off and peremptorily held that a *Batson* objection could not be raised. We therefore rejected the State's argument that Russell had forfeited his *Batson* objection. Id. at ¶ 21.

{¶ 16} We reversed the judgment and remanded this cause "for a full *Batson* analysis." Id. at ¶ 65. We advised the trial court that if it found no *Batson* violation, it could reinstate Russell's convictions and sentence, except for the award of restitution, which we reversed for reasons having nothing to do with the present appeal. Id.


### III.   The *Batson* Hearing on Remand.

{¶ 17} At the *Batson* hearing mandated by *Russell III*, the trial court first elicited from defense counsel that she had, indeed, been attempting to state a *Batson* objection to the State's use of a peremptory challenge to Prospective Juror No. 9 when the trial court cut her off. The trial court then asked her: "What, if any, indication would you make as to why there is a prima facie indication that that excuse was made with a racial basis?" Counsel responded by asserting that the mere fact that the juror peremptorily challenged was an African-American raised "a

presumption or a prima facie case that the prosecutor now has to address."

{¶ 18} The trial court then asked defense counsel if she had anything else she could point to in support of a prima facie case. She referred to the fact that there were only three African-Americans included in the panel of prospective jurors. One was excused for cause, without any objection by the defense; one served on the jury; and the other was Juror No. 9, who was excused by operation of the State's peremptory challenge. She argued that the State's use of a peremptory challenge to eliminate one of the two African-Americans remaining on the jury, or 50%, was sufficient: "So, the bar's not set very high, Your Honor. And I submit to the Court that we've met it."

{¶ 19} The trial court cited to footnote 1, ¶ 7 of *Russell III*, in which we stated: "Standing alone, the fact that the prosecutor struck an African American juror is not enough to establish a prima facie case." The trial court then noted that: "[I]n reviewing the entire voir dire, [I] cannot find any – any indication whatsoever that there was any questioning of a nature that could be inferred or construed or implied that there was any racial basis in questioning or responses of the entire voir dire up to the point that the State requested to exercise a peremptory on juror number nine."

{¶ 20} The trial court stated that: "I am going to rule that the defense has not demonstrated that there is a prima facie indication of discrimination for all of the reasons that I indicated, * * * ." Nevertheless, the trial court afforded the State the opportunity "to make a record on what you believe the neutral reason for excusing this particular juror peremptorily is[,] because memories may fade."

{¶ 21} But the trial court expressly declared that it was not going to rule on the issue of

whether any proffered reason for the peremptory challenge was an adequate race neutral reason, because to do so would moot that issue for appellate or federal review, "[a]nd I think that the Court of Appeals ought to decide specifically and give specific direction on whether or not there is prima facie indication of discrimination. So if I rule on whatever reason that the State might want to offer, then we will never get a further definition from the Second District Court of Appeals on exactly what they believe."[1]

{¶ 22} The prosecutor, who was the prosecutor who had exercised the peremptory challenge, availed himself of the opportunity to explain why he exercised it. He said that the juror had first got on his "radar screen of using a preempt" because she was young and did not have any work history. He explained that he preferred older, more mature, seasoned jurors, with a stable work history. He then said that it was the questioning by the defense, and the juror's responses, that led to his decision to exercise a peremptory challenge. He referred specifically to the colloquy at pages 191 to 193 of the transcript, which is worth quoting in full:

{¶ 23} MS. HAIRE [representing Russell]: * * *

{¶ 24} One final area I want to cover is a little bit about the deliberations. This may go on for a week. And Mr. * * * , I know you've handled your concerns. There will be a point when you go back together to begin deliberating on this case. My first question is, and I direct this partly to the mystery readers, can you wait? Can you not solve this case until you've heard all the evidence? Can you do that?

{¶ 25} (No verbal response)

---

[1] As a point of interest, the trial judge, at the time of the hearing, had been elected to the Second District Court of Appeals.

{¶ 26} MS. HAIRE: Okay. Does that – because it's a natural thing you want to do. You want to solve it. But we need to wait until everything is in from both sides. Does anybody have any – I know I'm prone to snap judgments. Anybody have any concerns about waiting until they hear all the evidence before they make a decision? Okay.

{¶ 27} Also, one of the things that can happen during deliberations is you can have differing opinions, and it can get pretty heated. You may feel strongly one way, and somebody else may feel strongly another way. And some people have trouble with that kind of confrontation and that back and forth. Does anybody here have any concerns about participating in deliberations that could get heated and contentious? Anyone? All right. Everybody is shaking their head no.

{¶ 28} Let me ask you this. I think [Juror No. 9] – am I saying that right?

{¶ 29} PROSPECTIVE JUROR NO. 009: [pronounces her name].

{¶ 30} MS. HAIRE: [pronounces name]. I am maybe making an assumption here. I think you might be one of the younger jurors. And even if you aren't, if everybody feels one way but you feel strongly the other way, do you think you'd just give in to go with the other folks? Or do you think you'd stand up for your belief and explain why you felt a certain way?

{¶ 31} PROSPECTIVE JUROR NO. 009: Probably stand up for myself and explain why I feel that way.

{¶ 32} MS. HAIRE: All right.

{¶ 33} PROSPECTIVE JUROR NO. 009: I'm not really easily persuaded.

{¶ 34} MS. HAIRE: At the same time, you – you'd be – would you remain open to understanding their point of view?

**{¶ 35}** PROSPECTIVE JUROR NO. 009: Yeah.   I'd remain open –

**{¶ 36}** MS. HAIRE: Okay.

**{¶ 37}** PROSPECTIVE JUROR NO. 009:   – to listening.

**{¶ 38}** MS. HAIRE: And if they persuaded you, you'd be willing to change their mind?

**{¶ 39}** PROSPECTIVE JUROR NO. 009: Yes, if it's credible.

**{¶ 40}** MS. HAIRE: Okay.   Okay.   You'd have to hear them out and consider it?

**{¶ 41}** PROSPECTIVE JUROR NO. 009: Yes.

**{¶ 42}** MS. HAIRE: You'd be willing to consider it?   All right.   Even if it's 5:30 and you want to get home, willing to consider it?

**{¶ 43}** PROSPECTIVE JUROR NO. 009: Yes.

**{¶ 44}** MS. HAIRE: Okay.   Does anybody have any concerns about – like I said, the deliberations can be intense.   It appears to be a very congenial group so I have a feeling that you all are going to get along.   But it can be combative back there, and I want to make sure everybody is comfortable with that as a possibility.   All right.

**{¶ 45}** At the *Batson* hearing, the prosecutor said he was concerned that in this interchange, Juror No. 9 was being "groomed to be a hold-out."   But what disturbed him even more, he said, was the juror's comment that she was "not easily persuaded."   According to the prosecutor, these were his reasons for peremptorily challenging Juror No. 9.   " * * * I couldn't care less the skin color of this juror, if they were red, green, orange, no matter – purple, I was going to ask that they be excused."

**{¶ 46}** After eliciting from the prosecutor his reasons for the peremptory challenge, the trial court gave defense counsel an opportunity to respond.   Defense counsel made the following

comment:

**{¶ 47}** It's interesting that Mr. Daidone should first note that he had concerns about this juror's work history and the fact that she hadn't worked because Mr. Daidone asked other white jurors who either weren't working or had been working, additional questions about their work history. He asked this juror none.

**{¶ 48}** And I should note that even though this juror looked young, according to her questionnaire, I believe – and I was struggling here to – to locate it, but it'll be in the record. She was 31 years old.

**{¶ 49}** So, while Mr. Daidone did not follow up with her at all about other potential work history, he followed up with white jurors such as [naming them]. Asked all the white jurors about their work history, but made no further comment or no further inquiry with this particular juror.

**{¶ 50}** * *

**{¶ 51}** And I would suggest to the Court that the fact that the work history – there was a disparate handling of the work history and the fact that if you read this as a whole, it simply shows a juror that's willing to fulfill the role of a juror, listen to all of the evidence, discuss it with her peers, and not cave in just to go along.

**{¶ 52}** The prosecutor responded. Included in his response was the point that because the State had the burden of proof at the trial, he was especially concerned that Juror No. 9 had said she was "not easily persuaded."

**{¶ 53}** The trial court re-iterated that it was only going to rule on the prima facie issue, finding that Russell had not met his threshold issue of establishing prima facie proof of

discrimination, and overruled the *Batson* challenge on that basis, without reaching the issue of whether the State had succeeded in establishing that it had a race-neutral reason for the peremptory challenge.

**{¶ 54}** In due course, Russell was re-sentenced, but after some discussion of how the mandate from this court should be interpreted, the sentence did not include any order of restitution. From his conviction and sentence, Russell appeals.

## IV. Russell Satisfied the Minimal Prima Facie Requirement for the First Stage of a Batson Objection.

**{¶ 55}** There are three stages of analysis in a *Batson* objection. First, the defendant must make a prima facie showing that the prosecutor has exercised a peremptory challenge on the basis of race. *Batson*, 476 U.S. at 82, 106 S.Ct. 1712, 90 L.Ed.2d 69. This threshold requirement is the one with which this appeal is concerned, since the trial court expressly disclaimed basing its ruling on the remaining stages of analysis. The remaining stages are whether the prosecutor has met his burden of articulating a race-neutral reason for the peremptory challenge, and, if the prosecutor does so, then the trial court must decide whether the prosecutor's race-neutral explanation is credible, or is instead a pretext for unconstitutional discrimination. *State v. Carver*, 2d Dist. Montgomery No. 21328, 2008-Ohio-4631, ¶ 49-50.

**{¶ 56}** Russell's First Assignment of Error is as follows:

**{¶ 57}** "THE TRIAL JUDGE ERRED WHEN HE RULED THAT THE DEFENSE DID NOT MAKE A PRIMA FACIE CASE OF DISCRIMINATION PURSUANT TO THEIR *BATSON* OBJECTION."

{¶ 58} In this very case, we have held that the fact that the State exercised a peremptory challenge against one of the two remaining African-Americans remaining on the jury after a third African-American prospective juror was removed for cause, without more, is insufficient to establish a prima facie case of racial discrimination. *Russell III,* 2008-Ohio-774, at ¶ 7, fn.1. Rightly or wrongly, this establishes the law of this case.

{¶ 59} The essential issue in this appeal is: What quantum of inferential proof, together with the fact that the State exercised a peremptory challenge to remove one of the two African-Americans remaining on the jury at that time, in a case in which an African-American was a defendant, is sufficient to establish a prima facie case of discriminatory intent, thereby satisfying the first stage of a *Batson* analysis?

{¶ 60} One Ohio court of appeals has held that peremptory challenges to three of four African-American jurors in an available jury pool, without more, was sufficient to establish a prima facie case. *State v. Brown*, 8th Dist. Cuyahoga No. 84059, 2004-Ohio-6862, ¶ 26. The same court, in the same case, held that the peremptory challenge to the first of the three African-American jurors, without more, did not establish a prima facie case. Id. at ¶ 23.

{¶ 61} The same court of appeals held in a civil case, the next year, that peremptory challenges to both of the only two African-American jurors among the potential jurors was sufficient to establish a prima facie case. *Martin v. Nguyen*, 8th Dist. Cuyahoga No. 84771, 2005-Ohio-1011, ¶ 12. Another court of appeals has held that the use of a peremptory challenge to exclude the sole African-American prospective juror, without more, establishes a prima facie case of discrimination. *State v. Barker*, 7th Dist. Jefferson No. 05-JE-21, 2006-Ohio-1472, ¶ 18.

{¶ 62} Evidently, not much is required to establish a prima facie case of discrimination

beyond the mere fact that an African-American has been excluded from a jury, by means of a peremptory challenge, in a trial involving an African-American defendant.  This is appropriate in view of the minimal burden imposed upon a prosecutor on a finding that a prima facie case has been made.  Ordinarily (this case being the rare exception), the prima facie finding will be made immediately after the peremptory challenge, when the prosecutor's non-racial reason for exercising the peremptory, assuming there is one, will be fresh in the prosecutor's mind.  It would be the lightest of burdens upon the prosecutor to require the articulation of that reason.  Because the burden imposed upon the prosecutor by a finding that a prima facie case has been made is so light, the requirement for the finding should be correspondingly slight.

{¶ 63} On appeal, Russell makes several arguments in support of a finding that a prima facie case was made.  The only one of these arguments to have been made at the *Batson* hearing is that Prospective Juror No. 9, unlike all the white prospective jurors, was not asked about her prior work history.  She was 31 years old, and had only recently completed her training as a masseuse.  She had not yet begun working in that field.  She was not asked about prior work experience.  Russell argues that this omission from her voir dire, as contrasted with other prospective jurors, supports an inference that the prosecutor was not interested in her prior work experience, since he already knew that he was going to exercise a peremptory challenge to keep her off the jury, because she was African-American.

{¶ 64} This argument was made at the *Batson* hearing, although it was made in response to the State's proffer of its reason for the peremptory challenge – not earlier, when the trial court had invited Russell to make his prima facie case.  Still, the argument was made at the hearing, before a final ruling had been made on the *Batson* objection, and the argument pertains equally to

the existence of a prima facie case. Furthermore, the trial court indicated that it had considered the entirety of the voir dire, the transcript of which it had read, in deciding whether there was a prima facie indication of a discriminatory intent in the exercise of the peremptory challenge.

{¶ 65} Russell makes an additional, similar argument on appeal. He argues that with the exception of one juror who was excused for cause, with the consent of both parties, all other prospective jurors besides Prospective Juror No. 9 were asked what they did in their spare time. The juror who was removed for cause was removed early in his voir dire, when it was disclosed that he had been imprisoned for ten years for a criminal offense in which this same prosecutor had been his prosecutor. There was obviously no need to question him further after this fact had been established. Again, Russell argues that the prosecutor's failure to have questioned Prospective Juror No. 9 about what she did in her spare time supports an inference that the prosecutor was not interested in this subject, because he had already made up his mind to exercise a peremptory challenge because Prospective Juror No. 9 was African-American.

{¶ 66} Unlike the disparity in questioning about prior work experience, which was brought up at the *Batson* hearing, if belatedly, this disparity was not mentioned at the *Batson* hearing. But again, the trial court said on the record that it had reviewed the entire voir dire, and could not "find any indication whatsoever that could be inferred or construed or implied that there was any racial bias in questioning or responses of the entire voir dire up to the point that the State requested to exercise a peremptory on juror no. nine."

{¶ 67} Without question, any inference that can be derived from these two discrepancies in the State's questioning of Prospective Juror No. 9, even considered together, is slight. Because Prospective Juror No. 9 evidently appeared more youthful than her actual age of 31, and

had just completed her training as a masseuse, the prosecutor may have assumed that she did not have any prior work experience. And there could be explanations why the prosecutor did not ask her about what she did in her spare time, starting with the simple explanation that he just forgot to do so. But we conclude that very little inferential proof is necessary, when added to the fact that an African-American prospective juror has been peremptorily excluded from a jury in a trial of an African-American, to make out the prima facie case necessary to impose upon the State the mere burden of articulating a race-neutral reason for the peremptory challenge.

{¶ 68} Although the issue is close, we conclude that there was a prima facie indication in the record of racial discrimination, and the trial court erred by failing to advance to the second and third stages of the *Batson* analysis.

{¶ 69} Russell does cite a few other circumstances in support of his argument that he made out a prima facie case, but we find none of them to be availing. The first of these is that Prospective Juror No. 9's responses were innocuous. But this puts the cart before the horse; the prosecutor is not required to prove facts sufficient to make out a challenge for cause as a predicate for exercising a peremptory challenge. The prosecutor's race-neutral explanation for the peremptory challenge is addressed in the second stage of the analysis, not the first stage.

{¶ 70} Russell next cites the comparative thoroughness with which the State addressed the fact that Prospective Juror No. 9's brother had been the victim of an attack. As the State points out, however, the attack was fairly recent – "late last year" – and the prospective juror was vague about whether the attack resulted in a criminal prosecution, a subject concerning which the prosecutor would naturally be interested. Russell cites this circumstance in support of an inference that the State had decided to eliminate Juror No. 9 as a juror, and wanted to develop

grounds for a challenge for cause, so that it would not have to waste a peremptory on her. Even if this were so, it does not support an inference that the State's motivation for wanting Juror No. 9 off the jury was racial. It could have decided that it wanted her off the jury for non-racial reasons, and naturally preferred to be in a position to challenge her for cause if it could do so, thereby saving a peremptory to use against some other prospective juror who was undesirable from the State's point of view.

{¶ 71} At the voir dire, after the trial court had interrupted defense counsel by stating that because only one prospective African-American juror was the subject of a peremptory, there could be no pattern, and therefore no *Batson* objection, the State noted that there was an African-American remaining on the jury. Russell cites this in support of an argument that the prosecutor thought he effectively had one free discriminatory peremptory challenge before a *Batson* objection could even be made, and that this supports an inference that the prosecutor's motive for the peremptory was discriminatory. To the contrary, the trial court had just issued a ruling on a *Batson* objection, and as we have seen, the circumstance of whether African-American jurors remained on the jury is material to a *Batson* objection, with one court having held that a peremptory challenge to the only African-American prospective juror, by itself, constitutes a prima facie case. *Barker*, supra. A prosecutor would be derelict in his duty if he did not establish on the record, in connection with a *Batson* objection, that there was an African-American remaining on the jury.

{¶ 72} Russell's First Assignment of Error is sustained.

## V. Russell's Claim of Ineffective Assistance of Counsel is Moot.

{¶ 73} Russell's Second Assignment of error is as follows:

{¶ 74} "THE DEFENDANT WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL AT THE *BATSON* HEARING."

{¶ 75} In view of our disposition of Russell's First Assignment of Error, his Second Assignment of Error is moot.


### VI.  This Court Cannot Decide the Third Stage of the *Batson* Analysis.

{¶ 76} Often, a trial court, in determining that a defendant has not met the prima facie showing requirement of the first stage of analysis of a *Batson* objection, will nevertheless rule on the second and third stages by ruling, in the alternative, that even if a prima facie showing was made, the prosecutor has articulated a race-neutral explanation for the peremptory challenge, and the trial court believes it to be the actual reason for the challenge.  If the trial court had made a similar finding in this case, we might well find the trial court's error in finding the absence of a prima facie showing to have been harmless.

{¶ 77} But in this case, the trial court expressly declined to make a ruling on the second and third stages of the *Batson* analysis.  The trial court did allow the prosecutor to state his reasons for the peremptory challenge on the record, and it did allow Russell to respond.  We have no hesitancy in proclaiming the reasons the prosecutor proffered to be race-neutral, and, for that matter, plausible.

{¶ 78} The third stage of the analysis is whether the prosecutor's race-neutral explanation for the peremptory challenge should be credited.  " 'Because this third stage of the analysis rests largely on the trial court's evaluation of the prosecutor's credibility, an appellate court is required

to give the trial court's findings great deference.' " *Russell III*, 2008-Ohio-774, at ¶ 9, quoting from *State v. Carver*, 2d Dist. Montgomery No. 21328, 2008-Ohio-4631, ¶ 50.

{¶ 79} Admittedly, upon remand there will be less than the ordinary reason to be deferential to the trial court's findings concerning the prosecutor's credibility. The trial judge who presided over the voir dire, and also the *Batson* remand hearing, is no longer available. But the trial judge who does preside over the proceedings upon remand will hear the prosecutor's explanation of his reasons for the peremptory challenge first-hand, and will, in any event, be closer to that prosecutor than we can be. There is still good reason for us to be deferential to the trial court's determination whether to credit the prosecutor's stated explanation of his reasons for the peremptory challenge.

{¶ 80} We conclude that we cannot resolve the third stage of the *Batson* analysis; that stage requires a hearing in the trial court.

## VII. Proceedings on Remand.

{¶ 81} Russell's First Assignment of Error having been sustained, and his Second Assignment of Error having been overruled as moot, the judgment of the trial court is Reversed, and this cause is Remanded for another *Batson* hearing. Upon remand, the trial court should take the prima facie case as having been shown, and proceed to the second and third stages of the *Batson* analysis. Again, as was the case upon remand after *Russell III*, if the trial court overrules the *Batson* objection, it may re-enter the convictions and sentences comprising the judgment. If it sustains the *Batson* objection, it should order a new trial.

. . . . . . . . . . . . .

GRADY, P.J., and DONOVAN, J., concur.


Copies mailed to:

Mathias H. Heck
R. Lynn Nothstine
Robert A. Brenner
Hon. Dennis J. Adkins