[Cite as *State v. Russell*, 2013-Ohio-5166.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                    :

    Plaintiff-Appellee                     :                C.A. CASE NO.    25467

v.                                               :                T.C. NO.    04CR3840/2

JAMES A. RUSSELL                                 :                (Criminal appeal from
                                                                  Common Pleas Court)
    Defendant-Appellant                    :

                                                 :

. . . . . . . . . .

**O P I N I O N**

Rendered on the    22nd    day of     November    , 2013.

. . . . . . . . . .

R. LYNN NOTHSTINE, Atty. Reg. No. 0061560, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

ANTONY A. ABBOUD, Atty. Reg. No. 0078151, 130 W. Second Street, Suite 1818, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

      **{¶ 1}**   James A. Russell appeals from a judgment of the Montgomery County

Court of Common Pleas, which reinstated, after a *Batson* hearing, Russell's convictions for aggravated robbery (with a firearm specification), felony murder (with a firearm specification), tampering with evidence, grand theft of a motor vehicle (with a firearm specification), gross abuse of a corpse, and having a weapon while under disability. For the following reasons, the trial court's judgment will be affirmed.

### I. Factual and Procedural History

{¶ 2}　The events giving rise to Russell's convictions occurred in September 2004. Russell had been living with his girlfriend, Candace Hargrove, in a local apartment. Hargrove, an admitted prostitute, arranged to meet the victim, Philip Troutwine, to have sex at the apartment. Before Troutwine arrived, Hargrove decided she did not want to have sex, and she and Russell planned to rob Troutwine instead. After Troutwine entered the apartment, Russell emerged from a hiding place, pointed a gun at him, and demanded money. While Hargrove was in another room, she heard sounds of a struggle and a single gunshot. Russell then entered the room and told her he had shot Troutwine. Hargrove and Russell proceeded to wrap Troutwine's body in a tent. They took the body downstairs and placed it in the trunk of Troutwine's car. They then cleaned up the blood, moved Troutwine's car to a parking lot near the Dayton Mall, and fled the area, going to Kentucky, Michigan, and finally California, where they were arrested.

{¶ 3}　We originally affirmed his convictions. *State v. Russell*, 2d Dist. Montgomery No. 21458, 2007-Ohio-137 ("*Russell I*"). Russell applied to re-open his appeal under App. R. 26(B), and we granted his application. Upon consideration of his additional assignments of error, we reversed the trial court's judgment and remanded for

further proceedings. *State v. Russell*, 2d Dist. Montgomery No. 21458, 2008-Ohio-774 ("*Russell II*"). Russell was re-tried in April 2009, and he was again convicted of the charges.

{¶ 4} On appeal from that judgment, Russell contended that the trial court erred in mishandling an issue under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) regarding the State's exercise of a peremptory challenge to excuse Prospective Juror #9, one of two African-Americans, from the jury. (Russell is African-American.) We found, and the parties agreed, that the trial court erred in finding no *Batson* issue on the basis that no "pattern" existed. We remanded this matter to the trial court for a full hearing under *Batson*. *State v. Russell*, 2d Dist. Montgomery No. 23454, 2010-Ohio-4765 ("*Russell III*").

{¶ 5} A *Batson* question involves a three-step analysis:

First, the defendant must make a prima facie showing that the prosecutor has exercised a peremptory challenge on the basis of race. *Batson*, 476 U.S. at 82, 106 S.Ct. 1712, 90 L.Ed.2d 69. * * * The remaining stages are whether the prosecutor has met his burden of articulating a race-neutral reason for the peremptory challenge, and, if the prosecutor does so, then the trial court must decide whether the prosecutor's race-neutral explanation is credible, or is instead a pretext for unconstitutional discrimination. *State v. Carver*, 2d Dist. Montgomery No. 21328, 2008-Ohio-4631, ¶ 49-50.

*State v. Russell*, 2d Dist. Montgomery No. 24443, 2012-Ohio-422, ¶ 55 ("*Russell V*").[1] At

---

[1]Russell had one additional appeal related to the collection of restitution and court costs associated with his criminal

the hearing upon remand, the trial court concluded that Russell had failed to establish a prima facie case of racial discrimination in the State's exercise of a peremptory challenge to excuse Juror #9. Russell appealed.

{¶ 6} Upon our review of the trial court's ruling, we concluded that there was a prima facie indication in the record of racial discrimination and that the trial court erred by failing to advance to the second and third stages of the *Batson* analysis. *Russell V*, *supra*. We noted that, while the trial court expressly declined to make a ruling on the second and third stages of the *Batson* analysis, the court did allow the prosecutor to state his reasons for the peremptory challenge on the record, and it did allow Russell to respond. *Id*. at ¶ 77. We commented: "We have no hesitancy in proclaiming the reasons the prosecutor proffered to be race-neutral, and, for that matter, plausible," but we concluded that we could not address the third stage of the *Batson* analysis. Accordingly, we again remanded the matter, with the following instruction:

> Upon remand, the trial court should take the prima facie case as having been shown, and proceed to the second and third stages of the *Batson* analysis. Again, as was the case upon remand after *Russell III*, if the trial court overrules the *Batson* objection, it may re-enter the convictions and sentences comprising the judgment. If it sustains the *Batson* objection, it should order a new trial.

{¶ 7} Pursuant to our remand, the trial court scheduled another *Batson* hearing for

---

case and the withdrawal of funds from his inmate account. *State v. Russell*, 2d Dist. Montgomery No. 24257, 2011-Ohio-390 ("*Russell IV*").

October 10, 2012. At this juncture, the original trial judge was no longer a judge of the common pleas court, and the hearing was held by that judge's successor. Prior to the hearing, Russell filed a pro se motion for a mistrial, arguing that only the original trial judge could address the *Batson* issue. Russell's defense counsel also raised the issue at the beginning of the hearing. The trial court denied the motion.

{¶ 8} The trial court began the *Batson* hearing by making a finding that there had been a showing of a prima facie case of discrimination. The court then asked the prosecutor to articulate any race-neutral explanation that he might have for excluding Juror #9. The prosecutor asked the court to take judicial notice of the record from the trial and the prior *Batson* hearing, and the prosecutor "highlighted" his reasons for exercising the peremptory challenge. The prosecutor and defense counsel also presented arguments as to whether the prosecutor's stated reasons were credible.

{¶ 9} The trial court found that the State articulated a race-neutral explanation for the peremptory challenge related to Juror #9, and that Russell had failed to meet his burden of proving purposeful discrimination. The court found that the prosecutor's race-neutral explanation was credible and was not a pretext for unconstitutional discrimination. The court thus re-entered the convictions against Russell.

{¶ 10} Russell appeals from the trial court's ruling, raising two assignments of error.

## II. Motion for Mistrial

{¶ 11} Russell's first assignment of error claims that the trial court erred in overruling his motion for a mistrial because the judge who originally sat through the voir

dire was not the judge who conducted the *Batson* analysis.

{¶ 12} Ordinarily, when a case is remanded by an appellate court for further proceedings by the trial court, the same trial judge would conduct the proceedings upon remand. In this case, however, when we remanded this matter for a full *Batson* hearing in *Russell V*, the original trial judge was no longer a judge of the Montgomery County Court of Common Pleas. The October 10, 2012 hearing was held by the original judge's successor.

{¶ 13} When *Russell V* was rendered, we were aware that a successor judge would conduct the *Batson* hearing, and we commented on that fact, saying:

> Admittedly, upon remand there will be less than the ordinary reason to be deferential to the trial court's findings concerning the prosecutor's credibility. The trial judge who presided over the voir dire, and also the *Batson* remand hearing, is no longer available. But the trial judge who does preside over the proceedings upon remand will hear the prosecutor's explanation of his reasons for the peremptory challenge first-hand, and will, in any event, be closer to that prosecutor than we can be. There is still good reason for us to be deferential to the trial court's determination whether to credit the prosecutor's stated explanation of his reasons for the peremptory challenge.

*Russell V* at ¶ 79. We note that at least one other court has expressly held that a successor judge could conduct a post-trial *Batson* hearing, provided that the successor judge, through a review of the trial record and holding post-trial hearings, was sufficiently able to assess the credibility of the State's reasons for exercising the peremptory challenge. *Craig v. Carlson*, 161 P.3d 648 (Colo.2007).

{¶ 14} Here, the trial court indicated that it had considered the entire record of the voir dire and the impaneling of the jury, including the written transcript and the video recording. The court stated that it had listened to the reasons stated by the prosecution on the record during the original trial and the *Batson* hearing, and that it had carefully reviewed the opinions and directions of the appellate court. The court also held a hearing during which it heard arguments from counsel and further explanation by the State for the use of a peremptory challenge on Juror #9. We have no basis to conclude that the trial court was unable to adequately rule on Russell's *Batson* challenge.

{¶ 15} Accordingly, the trial court did not err in denying Russell's motion for a mistrial. Russell's first assignment of error is overruled.

### III. *Batson* Issue

{¶ 16} In his second assignment of error, Russell claims that the trial court erred in overruling his *Batson* objection because the State's proffered race-neutral explanation was not credible.

{¶ 17} In Batson, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69, the United States Supreme Court held that the Equal Protection Clause forbids the State from exercising a peremptory challenge to excuse a juror solely because of that juror's race. *See State v. Murphy*, 91 Ohio St.3d 516, 747 N.E.2d 765 (2001) (applying *Batson*). "The Equal Protection Clause guarantees the defendant that the State will not exclude members of his race from the jury venire on account of race, or on the false assumption that members of his race as a group are not qualified to serve as jurors[.]" (Citations omitted.) *Batson*, 476 U.S. at 86.

{¶ 18} As stated above, a challenge to the State's use of a peremptory challenge

under *Batson* involves a three-step analysis:

> * * * First, the defendant must set forth a prima facie case of discrimination. To establish a prima facie case of discrimination, "the defendant must point to facts and other relevant circumstances that are sufficient to raise an inference that the prosecutor used its peremptory challenge specifically to exclude the prospective juror on account of his race."
> *State v. Carver*, 2d Dist. Montgomery No. 21328, 2008-Ohio-4631, ¶ 48, citing *Batson*, 476 U.S. at 95.
>
> If the defendant establishes a prima facie case of discrimination, the prosecutor must state a race-neutral explanation for striking the juror in question. *State v. Lewis*, 2d Dist. Montgomery No. 23850, 2011-Ohio-1411, ¶ 76. A race-neutral explanation means one based on something other than the juror's race. *Hernandez v. New York*, 500 U.S. 352, 360, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Id.* "[T]he issue is the facial validity of the prosecutor's explanation." *Id.*
>
> If the prosecutor provides a race-neutral explanation, the trial court must determine whether the defendant met his burden of proving intentional discrimination or whether the prosecutor's explanation was a pretext. *Lewis*, ¶ 76. "A trial court's finding of no discriminatory intent will not be reversed on appeal unless clearly erroneous." *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶ 61 (Citations omitted.)

*State v. Cunningham*, 2d Dist. Clark No. 10-CA-57, 2012-Ohio-2794, ¶ 36-38.

**{¶ 19}** The prosecutor told the trial court at the October 4, 2012 hearing, that he had excused Juror #9 because he preferred "a juror who is older, more mature, seasoned and has a stable work history. I look for people that got employed, that or maybe worked and retired or worked and have been laid off." The prosecutor stated that Juror #9 "had the appearance of being very, very young" and, although she had gotten a license to be a massage therapist a year before, she had not worked. The prosecutor noted that defense counsel had commented to Juror #9 during voir dire that "I think you may be one of the youngest jurors."

**{¶ 20}** The prosecutor explained that his reasons were also based on a colloquy between defense counsel and Juror #9 about "if everyone else feels one way, but you feel strongly the other way, do you think you'll just give in to go with the other folks or do you think you'll stand up for your belief and explain why you felt a certain way?" At trial, the prosecutor had perceived defense counsel's question as "grooming a holdout." The prosecutor continued:

> But it was really what led on after that in a few sentences that to me was the linchpin because after [defense counsel] says do you think you'd stand up for your belief and explain why you felt a certain way, the juror said probably stand up for myself and explain why I feel that way. [Defense counsel] says all right. And then the juror says this. I'm not really easily persuaded. I think when I heard that, my ears perked up and at that point I had made a decision that I wanted to have that juror excused.
>
> * * *

The State of Ohio, Your Honor, has the burden of proof in a homicide case. And the linchpin to my decision was her saying I'm not easily persuaded. At that point, Your Honor, my decision to ask that she be excused had absolutely nothing to do with race. * * *

{¶ 21} The prosecutor asked the trial court to consider other factors in determining whether his explanation was credible. The prosecutor pointed out that, earlier during voir dire, he "went into great detail about how prejudice plays no role in a criminal case. I talked to all the jurors about Lady Justice wears a blindfold and that color has absolutely nothing to do whether it's the victim's skin, defendant's skin or witness' skin as to a determination of a case. That it came from the evidence involved in the case and not the color of the players in the case. And I said that because and again you're judging my credibility because I have always felt that way in my 30 years of trying a case." The prosecutor noted that the court and the bar knew his reputation.

{¶ 22} The prosecutor also noted that three of the State's key witnesses in the case were African-American, including Hargrove and the downstairs neighbors. The prosecutor argued that "[i]t would be simply ludicrous to remove African-Americans from the jury simply because of race with that in mind." Moreover, the prosecutor indicated that another African-American was left on the jury.

{¶ 23} In response to the prosecutor's statements, defense counsel noted that Juror #9 was 31 years old, that other prospective jurors were not asked about their work history, and that Juror #9 had indicated that she would be open to the other jurors' point of view. Juror #9 had stated that she would be willing to change her mind if the other jurors' point of

view was credible.

{¶ 24}   The trial court concluded that the State articulated a race-neutral explanation for the peremptory challenge and that the explanation was credible and not a pretext for unconstitutional discrimination.   In reaching these conclusions, the court found that "it was credible that the viewing the juror she may appear to be younger than the 31 years of age." The court further found persuasive

> the arguments of the State that when juror number 9 was questioned by Defense counsel, her statement that she was not easily persuaded and that the Prosecution reasonably concluded that the Defense was grooming a holdout. The Defense does raise further comments made by juror number 9 after that comment that she would be open to change her mind after that comment but again, the Court finds that the Prosecution reasoning that this was persuasive to them to remove this juror is credible.

The trial court also found "credible and reasonable" the fact that another African-American was on the jury and that several State's witnesses were African-American.   The court found the prosecutor was, in general, well respected and that "his comments to the general voir dire that justice is blind, that race plays no part, is also some weight to the Court."   The court stated that it was aware of the reputation of both counsel and that it felt comfortable in judging the credibility of the parties.

{¶ 25}   As we stated in *Russell V*, we have no difficulty concluding that the reasons proffered by the prosecutor were race-neutral.   We emphasize that "'[t]he second step of [the *Batson*] process does not demand an explanation that is persuasive, or even plausible'; so

long as the reason is not inherently discriminatory, it suffices." *Rice v. Collins*, 546 U.S. 333, 126 S.Ct. 969, 163 L.Ed.2d 824 (2006), quoting *Purkett v. Elem*, 514 U.S. 765, 767-768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995).

{¶ 26} We also cannot find that the trial court's conclusions that the prosecutor's statements were credible and not a pretext for discrimination were clearly erroneous. In resolving this third step, the United States Supreme Court has made clear that the ultimate issue is whether the trial court believed that the prosecutor exercised the peremptory challenge for a nondiscriminatory reason. "Credibility can be measured by, among other factors, the prosecutor's demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy." *Miller-El v. Cockrell*, 537 U.S. 322, 339, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). "If a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson*'s third step." *Miller-El v. Dretke*, 545 U.S. 231, 241, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005). However, as the Supreme Court noted in *Hernandez v. New York*, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991): "There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies 'peculiarly within a trial judge's province.'" *Id*. at 365, quoting *Wainwright v. Witt*, 469 U.S. 412, 428, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985).

{¶ 27} Here, the prosecutor's explanation for exercising the peremptory challenge

was based primarily on Juror #9's youthful appearance, her lack of work experience, and her answer to questions about how strongly she would maintain her viewpoint. Although Juror #9 was 31 years old, there is support in the voir dire transcript that she may have looked younger than her actual age. In addition, Juror #9 stated that she was a licensed massage therapist, but "I just got licensed last year, so I haven't really been doing it quite yet. But I got licensed last year." In response to questioning by defense counsel, Juror #9 had stated that she was not easily persuaded, but she'd be willing to change her mind if the other jurors' point of view was "credible." We do not find that the prosecutor's reasons for striking Juror #9 would have applied to other jurors who were not stricken. In addition, the trial court found the prosecutor's reason to be credible, and the court's conclusion is entitled to deference.

{¶ 28} Russell claims that the prosecutor questioned Juror #9 differently than the other jurors, i.e., by not asking what she did in her spare time, by not asking about her work history, and by asking more questions about a lawsuit that Juror #9's brother may have been involved in. Upon reviewing the voir dire, we do not find material differences in the prosecutor's questioning of Juror #9 when compared to other prospective jurors.

{¶ 29} Further, we note that an African-American was seated on the jury. The Ohio Supreme Court has said that "[t]he presence of one or more black persons on a jury certainly does not *preclude* a finding of discrimination, but 'the fact may be taken into account * * * as one that suggests that the government did not seek to rid the jury of persons [of a particular] race.'" (Emphasis in original.) *State v. White,* 85 Ohio St.3d 433, 438, 709 N.E.2d 140 (1999), quoting *U.S. v. Young-Bey*, 893 F.2d 178, 180 (8th Cir.1990); *State v.*

*Ferguson*, 2d Dist. Clark No. 2010 CA 1, 2011-Ohio-6801, ¶ 50. The trial court considered this factor in reaching its conclusion. In addition, the prosecutor had admonished the prospective jurors not to consider race as part of the case. The trial court could have reasonably considered those statements as evidence of the prosecutor's lack of racial motivation.

**{¶ 30}** We do note that the prosecutor vouched for his personal attitude and that he has "always felt that way in my 30 years of trying a case." The prosecutor's self-evaluation is irrelevant. As stated in *Batson* regarding the second stage of the analysis, the prosecutor cannot rebut the defendant's prima facie case "merely by denying that he had a discriminatory motive or 'affirm[ing] [his] good faith in making individual selections.' If these general assertions were accepted as rebutting a defendant's prima facie case, the Equal Protection Clause 'would be but a vain and illusory requirement.'" (Citations omitted.) *Batson*, 476 U.S. at 98, 106 S.Ct. 1712, 90 L.Ed.2d 69.

**{¶ 31}** Additionally, the court commented that the prosecutor was "well respected" and that it was "aware of the reputation of both counsel." All this may well be true, but the reputation of the attorneys was not on the record. *See Adkins v. Warden*, 710 F.3d 1241, 1254 (11th Cir.2013) (trial court's personal experience with and opinion about the reputation of the prosecutor was not a proper consideration at *Batson* third stage because it was non-record evidence which the defendant did not have an opportunity to rebut). Most judges have personal opinions or are aware of the reputations of the attorneys and judges involved in the cases that come before them, but these must not factor into the decision-making process.

**{¶ 32}** Nevertheless, the trial court's conclusion that the peremptory challenge was

not a pretext for discrimination was not clearly erroneous.  Accordingly, the trial court did not err in overruling Russell's *Batson* challenge.

{¶ 33}  Russell's second assignment of error is overruled.

### III.  Conclusion

{¶ 34}  The trial court's judgment will be affirmed.

. . . . . . . . . .

DONOVAN, J., concurring:

{¶ 35}  I agree with the majority's conclusion that the trial court did not err when it reasoned that the prosecutor articulated race-neutral reasons for excusing Juror #9, to-wit: Juror #9's youthful appearance and lack of work experience.

{¶ 36}  However, I write separately to voice my concern over the trial court's conclusion that the prosecution reasonably concluded that the defense was  "grooming a holdout" as a basis to excuse Juror #9.  Juror #9's response, "I am not easily persuaded," is merely consistent with holding the State to its burden of proof beyond a reasonable doubt. The defense legitimately inquired of Juror #9 regarding honest convictions by asking the following question, "if everyone else feels one way, but you feel strongly the other way, do you think you'll just give in to go with the other folks or do you think you'll stand up for your belief and explain why you felt a certain way?"  This line of inquiry is both proper and entirely consistent with 2 OJI-CR-297.33, which reads:

> Your initial conduct upon commencing deliberations is important.  It
> is not wise to express immediately a determination or to insist upon a certain

verdict. Having so expressed yourself, your sense of pride may be aroused, and you may hesitate to give up your position even is shown that it is not correct.

Consult with one another in the jury room, and deliberate with a view to reaching an agreement if you can do so without disturbing your individual judgment. Each of you must decide this case for yourself. You should do so, however, only after a discussion of the case with the other jurors. Do not hesitate to change an opinion if convinced that it is wrong. You should not surrender your considered opinion concerning the weight of the evidence, however, in order to be congenial or to reach a verdict solely because of the opinion of other jurors.

**{¶ 37}** In my view, this case might well have had a different outcome were there not a record of legitimate and credible concerns over Juror #9's youth and lack of employment history. However, a juror who indicates she is not "easily persuaded" is simply indicating a willingness to hold the State to its burden of proof beyond a reasonable doubt. A juror should not be struck because of a willingness to follow the law. Trial courts should be vigilant when such justification is argued by the State in response to a *Batson* challenge.

. . . . . . . . . .

WELBAUM, J., concurring:

**{¶ 38}** I agree with the majority opinion in all respects, but concur to very respectfully express my difference of opinion with the other concurrence. Such concurring opinion implies that Juror #9, a minority juror, could not have been lawfully excused by a

peremptory challenge for one of the strategic, nondiscriminatory reasons articulated by the prosecutor.

{¶ 39} The prosecutor informed the trial court that one reason he wished to excuse the juror was because the juror stated that she is "not really easily persuaded." The prosecutor also stated he believed the juror had been groomed as a defense holdout.

{¶ 40} *Batson* forbids the State from exercising a peremptory challenge to excuse a juror solely because of a juror's race. The prosecutor's reason for exercising a peremptory challenge must be nondiscriminatory and facially credible.

{¶ 41} The prosecutor's stated reason for exercising the challenge is relevant to the second and third stages of the *Batson* analysis. At the second stage of the *Batson* analysis, the prosecutor has the burden of articulating a race neutral reason for the peremptory challenge. The reasons at issue given by the prosecutor satisfy that requirement.

{¶ 42} The third step in the *Batson* analysis requires the trial court to decide whether the prosecutor's race neutral explanation is credible, or is instead a pretext for unconstitutional discrimination. As the majority correctly notes, "Credibility can be measured by, among other factors, the prosecutor's demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy." *Miller-El v. Cockrell*, 537 U.S. 322, 339, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

{¶ 43} Excusing Juror #9 for the reasons at issue are reasonable and have some basis in accepted trial strategy. I believe the prosecutor's purpose to excuse a perceived hold out juror who has been seemingly groomed by the defense satisfies this standard, considering the

realities of the adversarial system.

**{¶ 44}** Peremptory challenges may be grounded on any nondiscriminatory reason. The other concurring opinion suggests that trial courts be vigilant when such justification is given by prosecutors. However, the admonition does not square with *Batson* or any other standard found in the law of peremptory challenges. For these reasons, I very respectfully disagree with the other concurring opinion, and agree with the majority opinion.

. . . . . . . . . .

Copies mailed to:

R. Lynn Nothstine
Antony A. Abboud
Hon. Dennis J. Adkins